UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
Lafayette Division

| | |
|---|---|
| **TAMMY OAKLEY MAYO** | * Civil Action No. 18-425 |
| | * |
| vs | * |
| | * |
| **ST. LANDRY PARISH COMMUNICATIONS** | * |
| **DISTRICT E-911** | * Jury Demand |

# COMPLAINT

**NOW INTO COURT,** Plaintiff, Tammy Mayo, respectfully represents that:

**Nature of Case**
1.

This action arises from St. Landry Parish Communications District E-911 (hereafter, *St. Landry 911*) violations of the Americans with Disabilities Act (ADA, 42 U.S.C. § 12101 *et seq.*) and the Louisiana Employment Discrimination Law at La. R.S. 23:323.

2.

The action is filed to provide Tammy Mayo (Mayo) relief for the unlawful discrimination in employment. Ms. Mayo seeks monetary and equitable remedies for her past and future wage losses, attorney fees, and mental and emotional distress.

**Jurisdiction and Venue**
3.

Plaintiff's claim involves a federal question arising from the ADA.

4.

Venue is proper with this Court because St. Landry 911 place of business was in this District [28 U.S.C. § 1391(b)(1)] and Plaintiff's claims arose out of events and omissions

of which a substantial part occurred in this District [28 U.S.C. § 1391(b)(2)].

## Parties

5.

Plaintiff Tammy Mayo, during the time of the issues of concern in this case, was a resident of Opelousas in the Parish of St. Landry. She met the definition of an employee and as a qualified individual under the ADA and the ADA's state equivalent.

6.

Defendant St. Landry 911 is one of St. Landry Parish Government's boards and commissions. St. Landry 911 is domiciled and its principal business office is in Opelousas, Louisiana. At all material times, Defendant was a covered entity and an employer within the meaning of the ADA and the state equivalent of that law.

## Administrative Procedures

7.

Plaintiff Tammy Mayo filed a charge of discrimination to the EEOC alleging disability discrimination. EEOC gave her charge # 461-2017-01970 within 300 days of her March 15, 2017 termination.

8.

On March 9, 2018, Ms. Mayo asked EEOC for a right to sue. EEOC wrote on March 22, 2018 that the U.S. Department of Justice would soon provide the right to sue.

9.

Plaintiff filed this Complaint within 90 days of her anticipated right-to-sue notice.

**Factual Allegations**

10.

St. Landry 911 hired Plaintiff Mayo in 1999—18 years before her firing in 2017.

11.

St. Landry 911 started Mayo as a tele-communicator and promoted her to a supervisor within seven months.  Mayo's starting wages were $6 per hour and her ending pay, $16.65 per hour.

*Breast-Cancer Diagnosis*

12.

Ms. Mayo's doctor diagnosed her with breast cancer on October 26, 2016.

13.

Ms. Mayo told her employer that same day that she had to start taking medical leave the next day because she was starting her breast-cancer treatment.

14.

Breast cancer is the most commonly diagnosed cancer among American women.  Frequently, breast cancer is treated in the order of surgery, chemotherapy, and radiation therapy.   Mayo took those common treatments.

15.

St. Landry 911 policy is that employees can, with director permission, take up to one year of sick leave.  Ex. 1.

16.

Mayo was and is disabled under the ADA because of her cancer.  A major life

activity is normal cell growth. 42 U.S.C. Sec. 12102 (2)(A). Cancer is abnormal cell growth. When cell growth returns to normal with treatment, cancer is in remission but could, when active, return and limit a major life activity. 42 U.S.C. Sec. 12102(4)(D).

*Two to Three Months After Cancer Diagnosis*
17.

On January 5, 2017, Ms. Mayo's doctor wrote telling St. Landry 911 that Mayo would undergo chemotherapy through May 2017. Ex. 2.

18.

On January 18, 2017, St. Landry 911's Executive Secretary, Candice Elkins, wrote that she expected Mayo to return to work on May 1, 2017. Ex. 3.

*Three to Four Months After Cancer Diagnosis*
19.

On February 20 and 23, 2017, Ms.Mayo met with Elkins and Operation Supervisor Ruth Dupre. They told Mayo her that her sick and vacation leave and medical insurance would soon end.

20.

A few days later, Ms. Mayo told Elkins that a co-worker would give Mayo her leave so that Mayo could stay on employer-provided medical insurance. Elkins called Mayo back and did not discuss the donation.

21.

In her call, Elkins asked Mayo if she could work 30 hours a week so as to keep her medical insurance. After consulting with her doctor, Mayo told Elkins that her doctor

advised her not to do so while on chemotherapy.

22.

Mayo's doctor had already stated that Mayo's chemotherapy would end in May (Ex. 2). If St. Landry 911 wanted additional information, it could have asked Mayo to provide it more information from her doctor. It did not.

*Four to Five Months After Cancer Diagnosis*

23.

On March 5, 2017, Ms. Mayo met with St. Landry 911 Executive Director Jude Moreau. He told her that she had run out of sick and vacation leave and she would be terminated (fired).

24.

On March 15, 2017, St. Landry 911 fired Tammy Mayo. Ex. 4.

25.

On March 15, 2017, St. Landry 911 paid Mayo her the sick and vacation leave she had used in that pay period. It also paid Mayo the balance of her unused leave of about 15 hours.

26.

St. Landry 911 fired Mayo because she was unable to work once she had used all her vacation and sick leave. Ex. 5.

27.

Mayo, however, was eligible for ADA leave after her vacation and sick leave had run out on about March 15, 2017.

*Six to Seven Months after Cancer Diagnosis*

28.

Mayo's doctor figured Mayo's chemotherapy would last through May 2017.  Ex. 2. Instead she completed it by May 10, 2017.

29.

Once Mayo's chemotherapy ended, she started radiation therapy.  Even with this therapy, Mayo was in otherwise good health and able to work.

30.

Mayo's radiation therapy took 15 minutes per day and the clinic was within 10 minutes of work.  Mayo would have needed a lunch hour to do radiation.

31.

Mayo could have returned to work in mid-May 2017. This was 6.5 months after she first went out on leave.  It was two months after St. Landry 911 fired her.  Had St. Landry 911 given her two months of ADA leave, she could have returned to work.

## CAUSE OF ACTION
**Disability Discrimination under the ADA and La. R.S. 23:322** *et seq.*

32.

The preceding paragraphs are incorporated herein by this reference.

33.

St. Landry 911 discriminated against Mayo in violation of the ADA and La. R.S. 23:322 *et seq.* on the basis of her disability when it refused to grant her leave under the ADA.  Had it done so, she could have returned to work after 6.5 months of leave (28 weeks at May 10, 2017).  Mayo had worked for St. Landry 911 for 18 years and had

shown she could do her job prior to her cancer diagnosis and she could have done so again once chemotherapy ended.

34.

St. Landry 911 further violated the ADA and La. R.S. 23:322 *et seq* when it failed to enter into the required interactive process with Mayo to determine whether an accommodation like leave would have allowed her to return to work.

35.

St. Landry 911 fired Mayo two months after her sick/vacation/FMLA leave ended. Additional leave under the ADA would have posed little expense to St. Landry 911. It was unpaid leave and St. Landry 911 only had to pay her medical insurance. If the medical insurance was too costly, St. Landry 911 could have ended Mayo's insurance without firing her.

36.

Mayo is unaware of any undue burden on St. Landry 911 for it to have placed Mayo on ADA leave for an additional two months after her other leave ended. St. Landry 911 often used others employed by St. Landry Parish Government or 911 retirees to substitute for absent, sick or injured 911 employees.

37.

Alternatively, if the Court finds Mayo had no disability, St. Landry 911 discriminated against Mayo because it regarded Mayo as having a disability.

38.

Alternatively, St. Landry 911 discriminated against Mayo because she had a record of a disability.

### Jury Demand

39.

Mayo respectfully demands a trial by jury on all issues.

**WHEREFORE,** Plaintiff, Tammy Mayo, prays that after due proceedings there be judgment in her favor and against Defendant St. Landry 911:

a. That Mayo be awarded all back pay, fringe benefits, front pay and other compensation lost as a result of Defendant's unlawful conduct in an amount to be determined by the jury;

b. That Defendant pay Mayo such compensatory damages as are determined by the jury;

c. That Plaintiff be awarded reasonable attorney's fees, litigation expenses, expert fees, and costs; and

d. That Plaintiff be awarded other and further relief as the Court deems just and appropriate.

**Respectfully submitted,**

BELL LAW FIRM, LLC

*/s/ Paul F. Bell*
Paul F. Bell (Bar #30391)
4949 Tulane Drive
Baton Rouge, LA  70808
Telephone: 225 284 3235
Facsimile: 888-812-7933   bz9@cox.net
*Counsel for Plaintiff, Tammy O. Mayo*

### Service Information

Plaintiff mailed this day, March 29, 2018 by  USPS certified mail *a Notice of Lawsuit and*

*Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to the Defendant at Executive Director Jude Moreau, St. Landry Parish E 911 Communications District, 780 Highway 742, Opelousas, Louisiana 70570 (337-948-9079).  Plaintiff also filed with this Court an unsigned summons.

                                         /s/ *Paul F. Bell*
                                         Paul F. Bell, Attorney for Plaintiff